ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL PASTOR (CABN 297948)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    daniel.pastor@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GRISELDA CANCELADA LICEAGA,<br><br>    Defendant. | CASE NO. 4:22-CR-361-JSW-2<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: October 1, 2024<br>Time: 1:00 p.m.<br>Judge: Hon. Jeffrey S. White |

### I. INTRODUCTION

Defendant Griselda Cancelada Liceaga pleaded guilty to Conspiracy to Launder Monetary Instruments—Count 1 of the Indictment—on May 28, 2024. PSR ¶ 3. Liceaga worked for the money transmitting business—Rincon Musical—in Oakland, California for several years and laundered narcotics proceeds for drug traffickers wiring money to Mexico. PSR ¶ 11-12, 14. Liceaga and her co-defendants used legitimate customers' names and IDs to make it appear that the large cash amounts they wired to Mexico for drug traffickers were unrelated wires (each less than $3,000) being sent by a variety of normal customers. In structuring wires for drug traffickers, the defendants used the detailed anti-money laundering training they received annually from a national wire service company (MSB-1) to evade detection as they laundered suspicious transactions. The defendants kept each of the structured

wires under $3,000 to avoid mandatory federal reporting requirements under the Bank Secrecy Act (BSA) and to avoid scrutiny from MSB-1's compliance team and the compliance teams of other MSBs whose wire services they used.[1]

**SENTENCING GUIDELINES CALCULATIONS**

As reflected in the PSR, the Sentencing Guidelines calculations are shown below:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2S1.1(a)(2):<br>(loss amount over $40,000) | | 14 |
| b. | Specific Offense Characteristic § 2S1.1(b)(1)(B)(i)<br>(defendant was willfully blind to the fact that the laundered funds were drug proceeds) | | +6 |
| c. | Specific Offense Characteristic § 2S1.1(b)(2)(B)<br>(conviction under 18 U.S.C. § 1956) | | +2 |
| d. | Zero-Point Offender, § 4C1.1 | | -2 |
| e. | Acceptance of Responsibility, § 3E1.1 | | -3 |
| f. | Total Offense Level: | | 17 |

*See* PSR ¶¶ 59-69. The government agrees with the Probation Officer that the defendant has no prior criminal history and thus falls into Criminal History Category I. PSR ¶¶ 70-77. An Offense Level of 17 and a Criminal History Category I yields an advisory guidelines range of 24 to 30 months. PSR ¶ 99.

### III. DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; and to protect the public. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Sentencing Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Section 3553(a) sets forth the factors that Congress has directed courts to consider in determining a sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences

---

[1] *See generally* Diego Ore, "How Mexican Narcos Use Remittances to Wire U.S. Drug Profits Home," Reuters Special Report, https://www.reuters.com/investigates/special-report/mexico-drugs-remittances (Aug. 18, 2023) (describing how drug traffickers have increasingly turned to local money transmitting businesses to move drug money across the U.S.-Mexico border since the start of the COVID-19 pandemic).

available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.

### A. The Offense Conduct

#### 1. Liceaga and Her Co-Defendants Routinely Laundered Drug Proceeds at an Oakland Money Transmitting Business.

Griselda Cancelada Liceaga, Veronica Mora, and Yoselin Perez Ramirez worked for Felipe de Jesus Ornelas Mora at Rincon Musical ("Rincon")—a money transmitting business in Oakland, CA. PSR ¶ 12. Liceaga and her co-defendants sent wires from the Oakland store to Mexico, Honduras, and other locations. PSR ¶ 11. Around December 2020, Liceaga left Rincon and opened her own money transmitting business America Latina with her husband a short distance away from Rincon Musical at 1226 Fruitvale Avenue in Oakland. PSR ¶ 12.

From as early as 2018 through 2022, Liceaga completed annual Anti-Money Laundering (AML) training through national Money Service Business 1 (MSB-1) as well as through other national MSBs whose wire services she used to send money from Rincon and from America Latina. PSR ¶ 13. The topics covered in MSB-1's AML training included: how to identify suspicious transactions, know your customer questions to ask, the definition of money laundering, red flags indicative of money laundering, what constitutes structuring of wire transactions, and what is meant by the phrase willful blindness in the context of money transmitting businesses. *Id.*

Liceaga knew from the MSB-1 AML training that it is a violation of AML policies to put inaccurate sender information on wires; to structure wires to avoid federal or state reporting requirements; and to fail to inquire about the source of large cash amounts brought in by customers. PSR ¶ 13. Liceaga knew from her AML training that it is illegal not to comply with customer information reporting and identification requirements for customers wiring more than $3,000. *Id.* Despite her understanding of money laundering from the AML training, Liceaga and her co-defendants knowingly conducted wires for narcotics traffickers who did not want their true names and identification documents used on wires in which drug money was sent from the Northern District of California to Mexico. PSR ¶ 14. Defendants used legitimate customers' identification cards (IDs) to avoid federal reporting

requirements and MSB-1's more stringent suspicious transaction notification requirements for local agents who used its wire services. *Id.* Liceaga and her co-defendants sent groups of wires that would have likely triggered scrutiny by MSB-1's compliance team had the defendants not manipulated the sender information and structured large cash amounts into multiple wires under $3,000 each, which appeared to be sent by different customers. PSR ¶¶ 24-28.

Among the many legitimate customers whose identity information Liceaga and her co-defendants misused to launder drug proceeds was an employee of national MSB-1. PSR ¶ 25. As shown in the table below, Liceaga used the victim's ID to send wires while she was working at Rincon Musical in 2020. PSR ¶ 26. After Liceaga left Rincon Musical in December 2020, she continued to use the victim's ID to send wires at her new business America Latina throughout 2021. *Id.* Co-defendants Veronica Mora and Yoselin Perez Ramirez also misused the victim's ID information to process wires throughout 2021. *Id.* As part of the investigation, agents interviewed the victim MSB-1 employee and confirmed that the victim had not ever sent wires in Oakland, California and was not familiar with Rincon Musical or America Latina. PSR ¶ 27; *see also* Dkt. 1 (criminal complaint) at 20.



| Date | Order # | Customer | ID Type/# | Send Agent Name | Beneficiary | Operator | Trans Amt |
|---|---|---|---|---|---|---|---|
| 9/2/2020 | US1938032240 | | | Rincon Musical | | GRICELDA CANCELADA | $1,730.00 |
| 6/23/2021 | US1517142560 | | | America Latina | | GRISELDA CANCELADA LICEAGA | $1,500.00 |
| 6/24/2021 | US387068816 | | | America Latina | | | $1,500.00 |
| 7/20/2021 | US196180061 | | | Rincon Musical | | VERONICA MORA | $2,900.00 |
| 8/16/2021 | US939869261 | | | Rincon Musical | | | $2,950.00 |
| 8/31/2021 | US1330439461 | | | America Latina | | | $2,500.00 |
| 9/9/2021 | US1609247761 | | | Rincon Musical | | VERONICA MORA | $2,900.00 |
| 9/13/2021 | US1721856861 | | | America Latina | | GRISELDA CANCELADA LICEAGA | $1,800.00 |
| 10/5/2021 | US235781162 | | | America Latina | | GRISELDA CANCELADA LICEAGA | $2,500.00 |
| 11/3/2021 | US1069723162 | | | Rincon Musical | | Yoselin Karina Perez | $2,850.00 |

The wires in the table above were structured into amounts below $3,000 to avoid the mandatory information reporting requirements that apply to a wire of $3,000 or more under the BSA. Liceaga and her co-defendants charged drug traffickers extra transaction "fees" for each of the structured wires that they sent under fake names and using the ID of an uninvolved person to hide the identity of the true sender. PSR ¶ 14. These unrecorded "fees" did not appear on wire receipts the defendants generated through MSB-1's wire system for the drug traffickers. *Id.*

### 2. Agents Arrest Drug Trafficker-1 Who Informed Them that Rincon Employees Wired Drug Money to Mexico for Him.

Agents arrested Drug Trafficker-1 for narcotics offenses in December 2020, and Drug Trafficker-1 was charged in federal court. PSR ¶ 14. Agents searched Drug Trafficker-1's phone, and Drug Trafficker-1 also provided information to the government. *Id.* Drug Trafficker-1, a Honduran national, told agents that Rincon assisted him with wiring drug proceeds to his drug source of supply in Mexico. PSR ¶ 15. Drug Trafficker-1 informed agents that he was often instructed by his source of supply to send money back to Mexico and that he used local money transmitting businesses to send the wire transfers. *Id.* The money transmitting business Drug Trafficker-1 used most often was Rincon in Oakland. *Id.*

Wire receipts on Drug Trafficker-1's phone showed that between August and December 2020, he wired over $109,000 to Mexico and Honduras at Rincon Musical. PSR ¶ 17. Drug Trafficker-1 sent over 60 wires to Mexico through Rincon from August 2020 to December 2020. *Id.* However, the wire receipts found on WhatsApp on his phone did not list Drug Trafficker-1 as the sender of the wires. *Id.*

Drug Trafficker-1 generally brought large amounts of cash to Rincon. PSR ¶ 17. According to Drug Trafficker-1, the female cashier who assisted him sometimes had to leave her post behind the enclosed counter and receive the cash in person because it would not fit through the teller window. *Id.* The cashier would then put the money through a cash counting machine. *Id.* Drug Trafficker-1 often gave the cashier bundles of cash even when he did not yet have the destined recipients' names in Mexico. *Id.* In those instances, he would send the cashier the recipient's name(s) through WhatsApp afterwards. *Id.* Sometimes, Drug Trafficker-1 had the recipient information and would send it to the female cashier on WhatsApp before dropping off the cash. *Id.*

1    After a Rincon cashier processed the wires for Drug Trafficker-1, the Rincon cashier would send Drug Trafficker-1 wire receipts within a few hours. PSR ¶ 18. A wire receipt shows the Money Transfer Control Number that a wire recipient generally needs to pick up the transferred money.  According to Drug Trafficker-1, the cashiers at Rincon charged him unrecorded "fees" in exchange for sending multiple wire transactions at once without requiring him to show ID.  PSR ¶ 16.

### 3. WhatsApp Chats on Drug Trafficker-1's Phone Showed Conversations with Griselda While She was Working at Rincon

The WhatsApp chats between Drug Trafficker-1 and Liceaga typically took place when Drug Trafficker- 1 needed to provide Griselda with the names of recipients to whom he wanted money wired. PSR ¶¶ 19-20. Griselda replied to Drug Traffker-1 with photos of wire receipts processed at Rincon. PSR ¶ 20.



The Rincon wire receipt shown above (which was found in Drug Trafficker 1's phone) lists "Gricelda C" as the operator of the wire transaction.  See Dkt. 1 at 15.  It shows the recipient of the wire transfer as

a person in Guadalajara, Mexico (whose name Drug Trafficker 1 supplied to Griselda in a WhatsApp chat). *Id.* The supposed sender of the wire was a normal, uninvolved customer of MSB-1 whose ID information and California Driver's License was available in the customer database maintained by MSB-1 and which was then accessible to local agents. Dkt. 1 at 16.

Similarly, as a general matter, the wire receipts found on the drug trafficker's phone showed recipients whose names Drug Trafficker-1 provided to the defendants over WhatsApp. PSR ¶ 20. The wire receipts also showed which cashier conducted the wires. PSR ¶ 20. Some of the receipts showed wire transactions that were conducted by "Griselda C" (Griselda Liceaga) while other receipts appeared to be records for wire transactions conducted by "Yoselin K" (Yoselin Perez Ramirez). *Id.* The senders listed on the wire receipts were unsuspecting third-party customers whose names were used to conduct wire transactions that would evade the compliance controls of MSB-1 and other wire services. *Id.*

    **4. WhatsApp Chats on Drug Trafficker-2's Phone Show Wires Conducted by Defendants Griselda Liceaga, Veronica Mora, and Yoselin Perez Ramirez at Rincon.**

Agents arrested Drug Trafficker-2 for drug offenses committed in the San Francisco Bay Area around June 2021. PSR ¶ 21. Agents searched his cellular phone, and Drug Trafficker-2 was interviewed by agents. *Id.* Drug Trafficker-2 told agents that he wired drug proceeds to Mexico at Rincon. *Id.* He would bring in his drug proceeds in cash and send the cashiers the recipients' names through WhatsApp. *Id.*

Drug Trafficker-2 stated that he went to Rincon based on the knowledge that other narcotics traffickers he knew would go there to send drug proceeds via wire transfers. *Id.* Drug Trafficker-2 said that he thought Rincon wanted to charge the unrecorded transaction fees he was charged for these transactions and neither cared nor asked if the cash was derived from drug sales. *Id.*

Drug Trafficker-2's phone contained a WhatsApp conversation between Drug Trafficker-2 and Liceaga, and a separate WhatsApp conversation between Drug Trafficker-2 and Veronica Mora. PSR ¶ 22. In Drug Trafficker-2's WhatsApp chat conversation with Griselda, in approximately May 2021, Drug Trafficker-2 sent Griselda people's names and photos of bank cards sent to him with the recipient names for an account in Mexico. *Id.* Griselda responded with photos of wire transaction receipts. *Id.* Some of these receipts showed recipients whose names and banking information Drug Trafficker-2 had

provided to Griselda. *Id.* The senders on the wire receipts were not Drug Trafficker-2, nor had Drug Trafficker-2 provided the sender names to Griselda. *Id.* The listed senders were unsuspecting third-party customers of MSB-1 whose information Griselda and other cashiers at Rincon obtained from MSB-1's customer database. PSR ¶ 22; PSR ¶¶ 23-28.

### 5. Store Owner Ornelas Mora Tells Agents He Taught Liceaga and Other Co-Defendants How to Send Money Laundering Wires

On August 31, 2022, co-defendants Felipe de Jesus Ornelas Mora, Yoselin Perez Ramirez, and Veronica Mora were arrested and agreed to speak with federal agents after being advised of their *Miranda* rights. PSR ¶¶ 46-47. Liceaga was arrested on the same day but declined to speak to agents after being advised of her *Miranda* rights. Ornelas Mora confirmed to agents that he knew his employees were laundering money that came from drug traffickers. PSR ¶ 46. He also confirmed that he taught Liceaga, Mora, Perez Ramirez, and other Rincon employees how to use the MSB-1 money service business software platform and how to look for IDs in the MSB-1 customer database. *Id.* In addition, Ornelas Mora acknowledged that he taught Liceaga how to use to the MSB-1 computer system and to find customer IDs on the MSB-1 computer system to use as the senders of illegal wires. *Id.*

### 6. Liceaga's Money Laundering at America Latina

On August 31, 2022, federal agents also conducted a search warrant at America Latina—Liceaga's money transmitting business. Agents seized and searched the phones of Griselda and her significant other who worked with her sending wires at America Latina. Agents' review of Liceaga and her significant other's WhatsApp messages showed conversations in which they sent back and forth a large number of photos of customer IDs in connection with planned wire transfers. PSR ¶¶ 48-49, The messages and agents investigation showed that Liceaga's partner conducted at least 17 money laundering wires for Drug Trafficker 3. PSR ¶ 49.

Agents arrested Drug Trafficker 3 for distributing fentanyl and other drugs in the San Francisco Bay Area in August 2023. PSR ¶ 50. Drug Trafficker 3's cell phone was seized incident to his arrest, and agents found WhatsApp conversations between Drug Trafficker 3 and Liceaga and between Drug Trafficker 3 and Liceaga's partner. *Id.* Investigators' discovery that Drug Trafficker 3 sent wires to

Mexico from America Latina prompted them to cross-reference the WhatsApp chats on the phones seized from Liceaga and her partner.

Transaction receipts found in Liceaga's WhatsApp chat with Drug Trafficker-3 show a general pattern of Liceaga receiving wire recipient IDs and bank account numbers from Drug Trafficker 3. PSR ¶ 51. Liceaga would then wire money to the specified recipients using the IDs of uninvolved persons as the supposed senders. PSR ¶¶ 51-52. She would then message Drug Trafficker 3 with wire receipts to show that the funds had been wired. *Id.* Drug Trafficker 3 has pleaded guilty to distributing fentanyl and to money laundering conspiracy in the Northern District of California.

In total, between March 2022 through August 2022, Liceaga and her boyfriend sent at least 128 wire receipts totaling over $235,000 for Drug Trafficker 3 that did not list Drug Trafficker 3 as the sender of the wire. The WhatsApp chats and receipts that Liceaga and her boyfriend sent to Drug Trafficker 3 show which wires were sent for Drug Trafficker 3 under fake names. Liceaga and her boyfriend charged an extra fee of $50 (not shown on the wire receipt) for each of these wires. PSR ¶ 52.

**B.    Other Factors under 18 U.S.C. § 3553(a)**

Liceaga is 41 years old and has resided in the United States since roughly 2006. PSR ¶¶ 79, 81. She has one 18-year-old son with a prior partner. PSR ¶ 84. Her son is currently living with Liceaga's friends. *Id.* Liceaga had a stable and happy childhood in Mexico during which her basic needs were met. PSR ¶ 80. Her mother passed away when Liceaga was 21 years old. *Id.* Liceaga came to the United States to be able to support her remaining family in Mexico. PSR ¶ 87.

Liceaga told the Probation Officer that she knew the transactions she was conducting at Rincon Musical were wrong. PSR ¶ 57. She further stated that legitimate customers at Rincon Musical were made "nervous" by other customers who came into the store and sent wires under fake identities and in "amounts that would need to be broken down to avoid detection." *Id.* The Court sentenced Liceaga's boss at Rincon Musical—Felipe de Jesus Ornelas Mora—to 18 months in prison for his part in the money laundering conspiracy. PSR ¶ 6.

Liceaga wanted to become a small business owner like her mother who owned a small grocery store in Mexico. PSR ¶¶ 57, 81. In the spring of 2021, after she left Rincon Musical, Liceaga opened

her own store America Latina a short distance away that also offered money transfers. *Id.* She says that she did not intend to conduct the type of illegal transactions which she had done at Rincon Musical. *Id.*

According to Liceaga, some of her prior customers visited her at America Latina and threatened "consequences" and that something would happen to her son if she did not send structured wires for them as she had done before at Rincon Musical. PSR ¶ 57. In November 2021, after she had declined to conduct illegal wires for them, she reported to the police that her store had been burglarized. *Id.* She says one of her prior customers then visited her again and threatened to harm her son. *Id.*

The government is aware of these statements, which were conveyed to the Probation Officer as an explanation of what influenced Liceaga to commit the instant offense. With respect to the offense conduct at Rincon Musical, these claims neither explain nor excuse Liceaga's agreement to commit money laundering with her co-defendants there. With respect to her conduct at America Latina, the government offers two observations about related evidence which was produced to the defense. The government did not find chats showing threats or that Liceaga feared harm in her WhatsApp chats with Drug Trafficker 3 for whom she conducted over 100 money laundering wires at America Latina between March and August 2022. The government also did not find chats showing fear or threats in Liceaga's WhatsApp chat (*see* PSR ¶¶ 48-53) with her then boyfriend and co-owner at America Latina with whom she discussed sending wires for Drug Trafficker 3 and others.

### IV. CONCLUSION

After considering the factors discussed above, and the full Presentence Report, the government respectfully recommends that the Court impose a sentence of 24 months in prison, 3 years of supervised release, and the conditions recommended by U.S. Probation.

DATED: September 24, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

__/s/_____
DANIEL PASTOR
Assistant United States Attorney